IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **MARIA MILAGROS MATTA-RODRÍGUEZ, et al.**<br><br>    **Plaintiffs,**<br><br>            **v.**<br><br>**ASHFORD PRESBYSTERIAN COMMUNITY HOSPITAL, et al.**<br><br>    **Defendants.** | **CIVIL NO. 12-1028 (PAD)** |

**OPINION AND ORDER**

Before the Court is defendants' Motion for Summary Judgment (Docket No. 42). For the reasons explained below, defendants' motion is granted and plaintiffs' EMTALA claims dismissed with prejudice.

**I.     PROCEDURAL BACKGROUND**

On January 18, 2012, plaintiffs Teresa Rodríguez-Nieves; María Milagros Matta-Rodríguez; María Teresa Matta-Rodríguez; María del Rocío Matta-Rodríguez; Nicolás Matta-Rodríguez; Carlos Muñiz-Matta; and José Nicolás Muñiz-Matta[1] filed a complaint against defendants Ashford Presbyterian Community Hospital ("Ashford Hospital"), Dr. Amaury Capella and Dr. Mónica Santiago-Nuñez for failure to screen and stabilize patient Nicolas Matta-Rodríguez in violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C.A. § 1395dd (Docket No. 1).[2] Plaintiffs included a supplemental cause of action for medical

---

[1] Plaintiffs Nicolás Matta-Rodríguez, María del Rocío Matta-Rodríguez, María Milagros Matta-Rodríguez and María Teresa Matta-Rodríguez are also requesting compensation as heirs of Nicolas Matta-Rodríguez (for his own physical and emotional damages) (Docket No. 1 at ¶ 54).

[2] On September 10, 2014, the claims against doctor Santiago-Nuñez, were dismissed with prejudice (Docket No 40).

Case 3:12-cv-01028-PAD   Document 59   Filed 07/18/14   Page 2 of 18

María M. Matta-Rodríguez, et al. v. Ashford Presbyterian Community Hosp. et al.
Civil No. 12-1028 (PAD)
Opinion and Order
Page 2

malpractice pursuant to Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 §§ 5141 and 5142. Id. at ¶ 2.

Following discovery, defendants moved for summary judgment, arguing the uncontested facts show Ashford Hospital complied with its obligations under EMTALA. Consequently, they contend that (1) the claim giving rise to federal jurisdiction should be dismissed with prejudice, and (2) the remaining, supplemental state claims should be dismissed without prejudice. Plaintiffs opposed the summary judgment request (Docket No. 52), and defendants replied (Docket Nos. 54 and 56).

## II.  RELEVANT FINDINGS OF FACT

The following material facts are undisputed.[3]

Co-defendant Ashford Hospital is a private medical institution with facilities in San Juan, Puerto Rico. Docket No. 42, Exh. 1, Ashford Hospital's Statement of Uncontested Material Facts in Support of Motion for Summary Judgment ("SUMF") at ¶ 1. It is also a participating hospital with an emergency department, as defined by EMTALA. Id. at ¶ 2.

On June 3, 2011, Nicolas Matta-Rodríguez, an 82-year old male, arrived at Ashford Hospital's emergency room ("ER") with chest pain and eventually complained of abdominal pain (in the right upper quadrant), abdominal sounds and tenderness in the epigastric area. Id. at ¶ 3.

An abdominal-pelvic CT was performed and revealed acute cholecystites and cholelithiasis with associated pancreatitis. Id. at ¶ 4.  On June 4, 2011, Matta-Rodríguez was admitted as a patient

---

[3] The uncontested material facts submitted by defendants in support of their motion for summary judgment were stipulated by all the parties (Docket Nos. 42 and 36 at pp. 58-61). Plaintiffs submitted 47 counterstatements of uncontested facts in addition to their opposition to defendants' statement of uncontested facts (Docket No. 52 at pp. 3-13). Although the Court reviewed every statement submitted by the parties and the supporting documents, it will only consider and include in this Opinion and Order those facts that are material for purposes of summary judgment as mandated by Fed.R.Civ.P. 56.

Case 3:12-cv-01028-PAD   Document 59   Filed 07/18/14   Page 3 of 18

María M. Matta-Rodríguez, et al. v. Ashford Presbyterian Community Hosp. et al.
Civil No. 12-1028 (PAD)
Opinion and Order
Page 3

to Ashford Hospital, to the service of doctor Santiago-Nuñez with a diagnosis of gallstone and pancreatitis. Id. at ¶ 5. Plaintiffs have not and do not allege that Matta-Rodríguez' admission to Ashford Hospital subsequent treatment was done in bad faith to avoid the EMTALA obligation. Id. at ¶ 6.[4]

At the time Matta-Rodríguez was admitted, a comprehensive metabolic panel ("CMP") showed he had an increased level of bilirubin (1.5 out of a normal range of 0.3-1.2 mg/dL) and increased levels of alkaline phosphatase (185 out of a normal range of 50-136 U/L). Docket No. 52, Exh. 1, Plaintiffs' Counterstatement of Facts ("PCSF") at ¶ 13.

On June 7, 2011, Matta-Rodríguez was evaluated for open cholecystectomy. SUMF at ¶ 7. A follow up CMP of June 8, 2014, showed the levels of bilirubin and alkaline phosphatase had normalized (level of bilirubin at 1.3 mg/dL and levels of alkaline phosphatase of 82 U/L). PCSF ¶ 14. On June 9, 2011, Matta-Rodríguez doctor Capella performed the open cholecystectomy surgery. SUMF at ¶ 8.

A CMP performed on July 11, 2011, showed the levels of bilirubin and alkaline had increased (bilirubin at 2.8 mg/dL and alkaline phosphatase levels of 187 U/L). PCSF ¶ 20.

Plaintiffs admit that at the time Matta-Rodríguez was discharged on June 11, 2011 at 11:00 a.m., Dr. Milciades Mercedes[5] and doctor Capella were not aware of the June 11th CMP result. Doctor Mercedes does not recall having seen the June 11th CMP result before he decided to

---

[4] Plaintiffs admitted this statement but contend it is irrelevant for purposes of their EMTALA claims. The same is true with regards to SUMF ¶ 14. Thus, the statement is deemed admitted.

[5] Doctor Mercedes took over the care of Matta-Rodríguez in substitution of doctor Santiago. The last time doctor Santiago saw Matta-Rodríguez during the first hospitalization was on June 9, 2011 at 3:30 p.m. PCSF ¶ 17.

Case 3:12-cv-01028-PAD   Document 59   Filed 07/18/14   Page 4 of 18

María M. Matta-Rodríguez, et al. v. Ashford Presbyterian Community Hosp. et al.
Civil No. 12-1028 (PAD)
Opinion and Order
Page 4

discharge the patient and does not recall being aware that a CMP had been ordered the night before. Likewise, doctor Capella was not aware of the June 11th CMP. PCSF ¶¶ 22-25.

Neither doctor Mercedes' nor Capella's discharge notes make any mention to the June 11th CMP results and there is no note in the record that reflects any of the treating physicians saw the June 11th CMP results before Matta-Rodríguez left the hospital. PCSF ¶ 28. Before being discharged from Ashford Hospital, however, Matta-Rodríguez was evaluated by doctors Capella and Mercedes; who gave the discharge orders. SUMF at ¶¶ 9-10.

On June 15, 2011, at around 9:30-10:00 p.m., Matta-Rodríguez returned to the Ashford Hospital's ER complaining of upper abdominal pain. Id. at ¶ 11. Doctor Capella was consulted by the Ashford Hospital's ER personnel and readmitted Matta-Rodríguez to his services on June 16, 2011. Id. at ¶¶ 12 and 13.[6]

Dr. Roberto Canto was also consulted on June 16, 2011 at 10:30 a.m. Upon evaluation, he found Matta-Rodríguez was severely dehydrated, with a distended abdomen, blood pressure of 84/57 and a heart rate of 97. Thus, he recommended aggressive fluid therapy, admission to the intensive care unit and an abdominal-pelvic CT Scan (stat). Id. at ¶ 15. The CT scan showed "internal development of post cholecystectomy ascites[7]." Id. at ¶ 16. The day after, on June 17, 2011, a "tap" or "paracentesis" to remove the fluid was performed on Matta-Rodríguez.[8] During this procedure, two liters of bile were drained from the abdominal cavity. Id. at ¶ 17.

---

[6] As with his initial admission to the Ashford Hospital, plaintiffs do not allege that Matta-Rodríguez' second admission and subsequent treatment was done in bad faith to avoid EMTALA obligation. Id. at ¶ 14.

[7] *Stedman's Medical Dictionary*, 154 (26th ed. 1995), defines ascites as the "[a]ccumulation of serous fluid in the peritoneal cavity."

[8] A "paracentesis" or "tapping" is defined as "[t]he passage into a cavity of a trocar and cannula, needle, or other hollow instrument for the purpose of removing fluid; variously designated according to the cavity punctured." *Stedman's Medical Dictionary* at 1293.

Case 3:12-cv-01028-PAD   Document 59   Filed 07/18/14   Page 5 of 18

María M. Matta-Rodríguez, *et al.* v. Ashford Presbyterian Community Hosp. *et al*.
Civil No. 12-1028 (PAD)
Opinion and Order
Page 5

The parecentesis indicated the patient had suffered from a "biliary leak" somewhere within the biliary tree. Id. at ¶ 18.

A hepatobiliary scan done on June 18, 2011, showed the patient still had biliary leakage and, thus, the injury causing the leak had not healed spontaneously. Id. at ¶¶ 19 and 20.

A magnetic resonance cholangiopancreotography ("MRCP") was also done on June 21, 2011. This test showed a collapsed biliary system and a moderate amount of ascites. Id. at ¶ 21. The following date, an endoscopic retrogarde cholangiogram ("ERCP") was done. A cannulation[9] of the common bile duct could not be performed in spite of multiple attempts. Id. at ¶ 22.

At the time, Ashford Hospital did not have among its staff a surgeon specialized in hepatic surgery. Id. at ¶ 23.[10]  Because of this, on June 22, 2011, doctor Capella ordered and coordinated the transfer of the patient to Auxilio Mutuo Hospital ("Auxilio Mutuo") for hepatic surgery. Id. at ¶ 24.

An emergency exploratory laparotomy was performed on June 23, 2011 at 10:00 a.m. Matta-Rodríguez developed a multi-organ failure, and died on June 24, 2011 around 6:30 a.m. Id. at ¶¶ 25 and 26.

---

[9] According to *Stedman's Medical Dictionary* a cannulation or cannulization is the "[i]nsertion of a cannula"; which is "[a] tube which can be inserted into a cavity, usually by means of a trocar filling its lumen; after the insertion of the cannula, the trocar is withdrawn and the cannula remains as a channel for the transport of fluid." Id. at 269.

[10] Plaintiffs object to this statement alleging it is inadmissible because the doctor who signed the Statement Under Penalty of Perjury as Ashford Hospital's Medical Director (Dr. Francisco De la Torre) was not announced as witness in this case and the content of his statement was not disclosed during discovery.  Plaintiffs, however, provide absolutely no case law or authority in support of their objection as required by Local Rule 56(e). In their memorandum in opposition, they vaguely refer to Exhibits 16, 17 and 18 in support of their contention that Ashford Hospital never identified doctor De la Torre as a witness.  Plaintiffs failed to indicate the specific pages or paragraphs in those 14 pages to support their contention. Their memorandum in opposition is also devoid of any legal authority in support of their argument.  Moreover, a review of the Joint Proposed Pretrial Order filed at Docket No. 36, confirms that Ashford Hospital included Dr. Francisco De la Torre as a witness and, contrary to plaintiffs' objection to defendants' expert witnesses for failure to comply with Fed.R.Civ.P. 26 (see pages 63 and 64), they did not raise any objection to the inclusion of doctor De la Torre nor mentioned defendants' alleged failure to disclose his name during discovery.  Thus, this statement is deemed admitted.

Case 3:12-cv-01028-PAD   Document 59   Filed 07/18/14   Page 6 of 18

María M. Matta-Rodríguez, *et al.* v. Ashford Presbyterian Community Hosp. *et al*.
Civil No. 12-1028 (PAD)
Opinion and Order
Page 6

### III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of either party. It is "material" if it potentially affects the outcome of the case in light of applicable law. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).

### IV.   ANALYSIS

#### a.   The Emergency Medical Treatment and Active Labor Act

Congress enacted EMTALA in response to claims that hospital emergency rooms were refusing to accept or treat patients with emergency conditions but no medical insurance. See, H.R. Rep. No. 241, 99th Cong. 1st Sess.27 (1985), 605. "EMTALA therefore 'is a limited anti-dumping statute, not a federal malpractice statute.'" Ramos-Cruz v. Centro Médico del Turabo, 642 F.3d

Case 3:12-cv-01028-PAD   Document 59   Filed 07/18/14   Page 7 of 18

María M. Matta-Rodríguez, et al. v. Ashford Presbyterian Community Hosp. et al.
Civil No. 12-1028 (PAD)
Opinion and Order
Page 7

17, 18 (1st Cir. 2011) (citing Reynolds v. Maine General Health, 218 F.3d 78, 83 (1st Cir.2000)); see also, Maldonado-Rodríguez v. St. Luke's Memorial Hospital, Inc., 940 F.Supp.2d 30, 35 (D.P.R. 2013).

"'The avowed purpose of EMTALA was not to guarantee that all patients are properly diagnosed, or even to ensure that they receive adequate care, but instead to provide an 'adequate *first* response to a medical crisis' for all patients and 'send a clear signal to the hospital community ... that all Americans, regardless of wealth or status, should know that a hospital will provide what services it can when they are truly in physical distress.'" Reynolds 218 F.3d at 83 (quoting Baber v. Hospital Corp. of America, 977 F.2d 872, 880 (4th Cir.1992))(emphasis added).

With this purpose in mind, EMTALA imposes duties on covered facilities to: (a) provide an "appropriate medical screening examination" for those who come to an emergency room seeking treatment, and (b) provide, in certain situations, "such further medical examination and such treatment as may be required to stabilize the medical condition." Álvarez-Torres v. Ryder Memorial Hosp., Inc., 582 F.3d 47, 51 (1st Cir.2009) (citing 42 U.S.C.A. § 1395dd(a), (b)(1)(A); López-Soto v. Hawayek, 175 F.3d 170, 172-73 (1st Cir.1999)).

Plaintiff claim Ashford Hospital failed to comply with EMTALA on three (3) different occasions, to wit: (i) when it first discharged Matta-Rodriguez on June 11, 2011 with an "unstabilized emergency medical condition" allegedly caused by the surgery performed by doctor Capella (Docket No. 1 at ¶¶ 22-26); (ii) when a CT scan was not ordered as part of the initial screening of Matta-Rodriguez' second visit to the ER to determine the nature of his abdominal pain (Id. at ¶ 28); and (iii) when it transferred Matta-Rodriguez to Auxilio Mutuo in an unstable condition (Id. at ¶ 40).

Case 3:12-cv-01028-PAD   Document 59   Filed 07/18/14   Page 8 of 18

María M. Matta-Rodríguez, *et al.* v. Ashford Presbyterian Community Hosp. *et al*.
Civil No. 12-1028 (PAD)
Opinion and Order
Page 8

To establish an EMTALA violation, the *plaintiff* must show that: (i) the hospital is a participating hospital, covered by EMTALA, that operates an emergency department (or an equivalent facility); (ii) the patient arrived at the facility seeking treatment; and (3) the hospital either (a) did not afford the patient an appropriate screening in order to determine if she had an emergency medical condition, or (b) bade farewell to the patient (whether by turning her away, discharging her, or improvidently transferring her) without first stabilizing the emergency medical condition. Cruz-Vázquez v. Mennonite General Hospital, 717 F.3d 63, 68-69 (1st Cir. 2013) (citing Correa v. Hospital San Francisco, 69 F.3d 1184, 1190 (1st Cir.1995)). In this case, the parties agree that Ashford Hospital is a participating EMTALA facility.  They disagree with respect to the rest of the elements. The Court considers their arguments in turn.

### b. Failure to stabilize Matta Rodríguez' "new" emergency condition allegedly caused during the June 9th surgery, before discharging him on June 11, 2011.

In this case, plaintiffs are not claiming that EMTALA was breached when Matta-Rodríguez first arrived to Ashford Hospital on June 3, 2011 and was screened at the ER.  Rather, plaintiffs contend that EMTALA was breached when the Matt-Rodríguez was discharged home on June 11, 2011 with an "un-stabilized emergency medical condition caused by the surgery performed by Dr. Capella" (Docket No. 52 at p.2). It is plaintiffs' contention that defendants had a duty to stabilize a "new condition": the alleged laceration of the common hepatic duct allegedly caused during the surgery performed by doctor Capella and that led to bile leak into his abdominal cavity, before sending him home.

EMTALA guarantees patients the right, ". . .**if an emergency medical condition is determined to exist**, to have that **condition stabilized** before discharge or transfer to another

Case 3:12-cv-01028-PAD   Document 59   Filed 07/18/14   Page 9 of 18

María M. Matta-Rodríguez, *et al.* v. Ashford Presbyterian Community Hosp. *et al.*
Civil No. 12-1028 (PAD)
Opinion and Order
Page 9

hospital." Reynolds, 218 F.3d at 84 (emphasis added). To this end, Section 1395dd(b)(1) of Title 42 provides, in its relevant part, as follows:

> If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital **and the hospital determines that the individual has an emergency medical condition**, the hospital must provide either—
>
> (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or
>
> (B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

Defendants seek to have this claim dismissed by alleging that EMTALA does not apply to inpatients as they are already patients of the hospital. In support of their contention, they cite to the Department of Health and Human Services' Centers for Medicare and Medicaid Services ("CMS")'s interpretation of EMTALA. According to this regulation, once a hospital, acting in good faith, admits as an inpatient[11] and individual with the intention of stabilizing the emergency medical condition, the hospital satisfies its EMTALA obligations. See, 42 C.F.R. § 489.24(a)(ii) & (d)(2) (the "inpatients exception").

Plaintiffs vehemently object to the application of the inpatient exception in this case. They insist defendants breached their duty to screen under EMTALA when they released Matta-Rodríguez with an unstabilized "new emergency medical condition" that resulted from doctor Capella's negligence during the surgery performed on June 9, 2011. They further contend the First Circuit "expressly rejected" the inpatient exception in López-Soto v. Hawayek, 175 F.3d 170

---

[11] An inpatient is defined by the regulation as ". . .an individual who is admitted to a hospital for bed occupancy for purposes of receiving inpatient hospital services as described in § 409.10(a) of this chapter with the expectation that he or she will remain at least overnight and occupy a bed even though the situation later develops that the individual can be discharged or transferred to another hospital and does not actually use a hospital bed overnight." 42 C.F.R. § 489.24(b).

Case 3:12-cv-01028-PAD Document 59 Filed 07/18/14 Page 10 of 18

María M. Matta-Rodríguez, et al. v. Ashford Presbyterian Community Hosp. et al.
Civil No. 12-1028 (PAD)
Opinion and Order
Page 10

(1999), holding that EMTALA's duty to stabilize is not limited to the ER. Plaintiffs' arguments fail for two main reasons.

First, their reading of López-Soto is misplaced. In López-Soto a woman who came to the hospital to deliver her baby was admitted to the maternity ward. Problems developed during delivery and the child was born in severe respiratory distress and later died after being transferred to a different hospital. Defendant in López-Soto argued that the infant did not "[come] to the emergency room" and that the hospital, therefore, was not under an obligation to stabilize his emergency medical condition before transferring him to another hospital.

In rejecting defendants' argument, the First Circuit distinguished the requirements imposed by subsection (a) (medical screening), which are triggered by a patient's coming to the emergency department, from those imposed by subsections (b) and (c)(stabilization and transfer), which attaches "as long as an individual enters **any part** of the hospital and the hospital determines that an emergency medical condition exists." Id. at 174. Considering those facts, the Court held that subsection (a) and (b) are to be read disjunctively. Nowhere in López-Soto the First Circuit "expressly rejected" or even discussed the inpatient exception, as said controversy was not before the Court.

Moreover, courts in this District have persuasively applied the inpatient exception in various circumstances *post* López-Soto. See e.g., Vázquez-Rivera v. Hospital Episcopal San Lucas, Inc., 620 F.Supp. 2d 264 (D.P.R. 2009)("[A] hospital fulfills its statutory duties under EMTALA once it admits the patient.")(citing Benítez-Rodríguez v. Hospital Pavia Hato Rey, Inc., 588 F.Supp.2d 210, 215 and 42 C.F.R. § 489.24(a)(ii)); and Rivera v. Hospital Episcopal Cristo Redentor, 613 F.Supp. 2d 192, 199-200 (D.P.R. 2009). See also, Mark M. Moy, *The EMTALA*

Case 3:12-cv-01028-PAD   Document 59   Filed 07/18/14   Page 11 of 18

María M. Matta-Rodríguez, et al. v. Ashford Presbyterian Community Hosp. et al.
Civil No. 12-1028 (PAD)
Opinion and Order
Page 11

*Answer Book*, 1-36 to 1-39 (Aspen Publishers 2008 Edition)(answering the question of whether EMTALA applies to inpatients in the negative while discussing Section 489.24(a)(ii)'s provisions).

Second, even assuming the duty to stabilize is not limited to the ER, plaintiffs failed to demonstrate that the hospital had knowledge of Matta-Rodríguez' June 11th CMP result and, thus, detected an emergency medical condition. By its own terms, the duty to stabilize under EMTALA **only** arises after a hospital "determines that the individual has an emergency medical condition." 42 U.S.C.A. § 1395dd(b)(1). In other words, a hospital determination that a patient had an emergency medical condition is a necessary predicate to a stabilization claim. See, Kenyon v. Hosp. San Antonio, 2013 WL 210273, *6 (D.P.R. 2013)(holding that "EMTALA does not hold hospital accountable for failing to stabilize conditions of which they were not aware, or even conditions of which *they should have been aware*"(emphasis in original) (citing, Vickers v. Nash Gen. Hosp. Inc., 78 F.3d 139, 145 (4th Cir. 1996); see also, Álvarez v. Vera, 2006 WL 2847376 at *6 (D.P.R. October 2, 2006)(holding that "[a] hospital must have had actual knowledge of the individual's unstabilized emergency condition if an EMTALA claim is to succeed").

Here, plaintiffs admit that the bile "probably began leaking out of the common hepatic duct during the surgery, a fact that went **unnoticed** because Dr. Cappella **failed** to perform an intraoperatory cholangiogram" (Docket No. 52 at p. 17) (emphasis added).[12] They further admit that at the time Matta-Rodríguez was discharged on June 11, 2011 at 11:00 a.m., doctors Mercedes

---

[12] Moreover, the uncontested facts in this case confirm Ashford Hospital fulfilled its duties under EMTALA upon admission of Matta-Rodríguez in good faith and with the intention to provide treatment. Not only the hospital identified the emergency medical condition, evaluated and treated Matta-Rodríguez at the ER, admitting him as a patient. Matta-Rodríguez had surgery performed after being evaluated, and then was sent home. Under these circumstances it is hard to conclude that Ashford Hospital was refusing to treat a patient for lack of medical insurance, in contravention of EMTALA's anti-dumping purpose. Plaintiffs even concede to this fact.

Case 3:12-cv-01028-PAD   Document 59   Filed 07/18/14   Page 12 of 18

María M. Matta-Rodríguez, *et al.* v. Ashford Presbyterian Community Hosp. *et al*.
Civil No. 12-1028 (PAD)
Opinion and Order
Page 12

and Capella were not aware of the June 11th CMP result. It is also uncontested that doctor Mercedes does not recall having seen the June 11th CMP result before he decided to discharge the patient and that doctor Capella was not aware of the June 11th CMP. Additionally, plaintiffs concede that doctor Mercedes' nor Capella's discharge notes make any mention to the June 11th CMP results and there is no note in the record that reflects *any* of the treating physicians saw the June 11th CMP results before Matta-Rodríguez left the hospital. Thus, the necessary predicate to a stabilization claim –a hospital determination that a patient had an emergency medical condition – is not present.

That Ashford Hospital should have been aware of the CMP results, may constitute medical malpractice, but "EMTALA does not create a cause of action for medical malpractice." Correa v. Hosp. San Francisco, 69 F.3d 1184, 1192 (1st Cir. 1995); see also, Kenyon, 2006 WL 2847376 at *6 (although laboratory results did show "[a]bnormally high levels of creatinine," plaintiffs acknowledged in the third amended complaint that the patient's condition was "undiagnosed" and as such that HSA did not have actual knowledge of the condition); Vickers, 78 F.3d at 145 (holding that, if EMTALA covered the situation where the hospital "should have been aware," it would "become coextensive with malpractice claims for negligent treatment."). Thus, plaintiffs' claims for failure to stabilize the alleged "new medical condition" will be dismissed with prejudice.

### c. Failure to include an abdominal CT scan as part of Matta-Rodríguez' initial screening at his second visit.

A duty to appropriately screen a patient under EMTALA is independent from the duty to stabilize a patient. In the complaint, plaintiffs contend defendants breached this duty as part of the *initial* screening of Matta-Rodríguez' second visit to the ER to determine the abdominal pain (Docket No. 1 at ¶ 28).

Case 3:12-cv-01028-PAD   Document 59   Filed 07/18/14   Page 13 of 18

María M. Matta-Rodríguez, et al. v. Ashford Presbyterian Community Hosp. et al.
Civil No. 12-1028 (PAD)
Opinion and Order
Page 13

Section (a) of the statute provides as follows:

> In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, **to determine whether or not an emergency medical condition** (within the meaning of subsection (e)(1) of this section) exists.

42 U.S.C.A. § 1395dd(a).

This section does not define the term "appropriate medical screening examination." It clearly indicates, however, the purpose of the screening: to identify an "emergency medical condition." An emergency medical condition is defined by the statute as,

> a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in--
> (i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy,
> (ii) serious impairment to bodily functions, or
> (iii) serious dysfunction of any bodily organ or part[.]

42 U.S.C.A. § 1395dd(e)(1)(A).

In this case, it is uncontested that Matta-Rodríguez returned to Ashford Hospital on June 15, 2011, at around 9:30-10:00 p.m., complaining of upper abdominal pain and doctor Capella readmitted him to his services on June 16, 2011. Although plaintiffs admit an abdominal-pelvic CT Scan (STAT) was ordered by doctor Canto after being consulted at 10:30 a.m. on the same date Matta-Rodríguez was admitted (and hours before he returned to Ashford Hospital), they contend Ashford Hospital had an obligation to include the abdominal CT Scan as part of the *initial*

Case 3:12-cv-01028-PAD   Document 59   Filed 07/18/14   Page 14 of 18

María M. Matta-Rodríguez, *et al.* v. Ashford Presbyterian Community Hosp. *et al*.
Civil No. 12-1028 (PAD)
Opinion and Order
Page 14

screening of Matta-Rodríguez. They further allege this faulty "omission delayed the treatment of the patient's emergency medical condition" (Docket No. 52 at p. 21). Plaintiffs miss the mark.

First, although plaintiffs categorize the screening as "untimely," they do not allege either one of the scenarios for which EMTALA provides a cause of action under the failure to screen provision, that is, that Ashford Hospital refused to screen Matta-Rodríguez or that the screening it provided was inconsistent with regular screening procedures for similar-situated patients. Vázquez-Rivera, 620 F.Supp.2d at 269 (internal citations omitted). At the end of the day, "[t]he essence of [the screening requirement] is that there be some screening procedure, and that it be administered even-handedly." Correa, 69 F.3d at 1192.

Second, plaintiffs' contention overlooks the fact that "EMTALA is a limited 'anti-dumping' statute, not a federal malpractice statute." Reynolds, 218 F.3d at 83. Thus, "faulty screening, . . .as opposed to disparate screening or refusing to screen at all, does not contravene the statute." Correa, 69 F.3d at 1192-1193. Simply put, "[i]t is not enough to proffer testimony as to what treatment *should* have been provided to a patient in [Matta-Rodríguez'] condition." Plaintiffs must "proffer[] evidence sufficient to support a finding that [Matta-Rodríguez] received materially different screening than did other patients in his condition." Id. They failed to do so.

As previously explained, the duty to screen under EMTALA aims at one goal: that a determination can be made as to whether or not an emergency medical condition exists. In this case, the fact that Ashford Hospital made such a determination and admitted Matta-Rodríguez is not questioned by plaintiffs. Therefore, it is apparent that Ashford Hospital complied with its duty to screen under EMTALA, inasmuch as plaintiffs admit the doctors (1) identified that Matta-Rodríguez was in fact suffering from an emergency medical condition, and (2) admitted him for

Case 3:12-cv-01028-PAD   Document 59   Filed 07/18/14   Page 15 of 18

María M. Matta-Rodríguez, *et al.* v. Ashford Presbyterian Community Hosp. *et al.*
Civil No. 12-1028 (PAD)
Opinion and Order
Page 15

further treatment. Nor is there a dispute that Matta-Rodríguez was admitted for a second occasion and that several tests (including the abdominal-pelvic CT Scan (stat)) were performed. Only one conclusion follows: plaintiffs' EMTALA claims for failure to screen fail as a matter of law. Those claims will be dismissed with prejudice.[13]

### d. Ashford Hospital's breach of EMTALA when it transferred Matta-Rodríguez to Auxilio Mutuo in an unstable condition

In the complaint, plaintiffs fault Ashford Hospital under EMTALA for transferring Matta-Rodríguez to Auxilio Mutuo in an unstable condition. As with the other claims, defendants have moved to dismiss, reiterating that this claim falls outside the scope of EMTALA. In this connection, they point out that Matta-Rodríguez was admitted as an inpatient with the intention of stabilizing his emergency medical condition in compliance with EMTALA.

In the alternative, defendants argue that EMTALA only "punishes *improvident* transfers." (Docket No. 54 at p. 9) (citing Torres Otero v. Hosp. General Menonita, 115 F.Supp.2d 253, 260 (D.P.R. 2000)) for the proposition that EMTALA seeks to fill the gaps left by traditional state law: an improvident transfer or discharge of a patient, particularly before treatment is initiated, risks leaving a patient without legal support).

Finally, they contend the uncontested facts in this case show: that after being admitted the second time, Matta-Rodríguez was diagnosed and evaluated by doctor Roberto Canto; a CT scan and tap were performed and two liters of bile were drained from Matta-Rodríguez; three more

---

[13] Plaintiffs contend that "jurisdictional facts are inextricably intertwined with the merits of the case, so the Court must deny defendant' motion for summary judgment," conclude it has jurisdiction, and decide the case on its merits (Docket No. 52 at pp. 14 and 15). In support of their argument, they cite to Reyes-Morales v. Hosp.Gen.Menonita, Inc., 2013 WL 1089752 (D.P.R. March 15, 2013). Contrary to plaintiffs' contention, the portion of Reyes-Morales cited *encouraged* the defendant to present its jurisdictional arguments in a motion for summary judgment once discovery was conducted. Id. at p. *2 ". . .[W]e will defer ruling on the jurisdictional question until the parties have had an adequate opportunity to conduct merits and jurisdictional discovery. The parties will then be free to present their arguments, either at trial or at the summary judgment stage."

Case 3:12-cv-01028-PAD   Document 59   Filed 07/18/14   Page 16 of 18

María M. Matta-Rodríguez, *et al.* v. Ashford Presbyterian Community Hosp. *et al.*
Civil No. 12-1028 (PAD)
Opinion and Order
Page 16

scans/studies were performed and, after seven days of being an inpatient of Ashford Hospital, the treating doctor decided to transfer Matta-Rodríguez to Auxilio Mutuo, where he would undergo a procedure that could not be performed at Ashford Hospital as it did not have amongst its staff a surgeon specialized in hepatic surgery at that time (Docket No. 43 at p. 15 and SUMF ¶ 23).

Plaintiffs' sole response to this argument is that, "there is a factual controversy as to whether [Ashford Hospital] had or not the resources to stabilize the patient's [emergency medical condition] prior to transfer, controversy that must be submitted to the jury." In support of their objection, plaintiffs insist on a matter that has been already considered and resolved by the Court: whether or not doctor De la Torres' statement should be considered. The Court already decided it is admissible for purposes of summary judgment and deemed this statement admitted. See, footnote 10.

The Court does not need to tarry long on this topic, as it is clear that Ashford Hospital did not breach EMTALA when it transferred Matta-Rodríguez to Auxilio Mutuo; he was already admitted as a patient. See, Mark M. Moy, *op cit.* 3-2 (explaining that transfers from a hospital's inpatient wards are not governed by EMTALA but rather by Medicare's Conditions of Participation). Likewise, considering the uncontested facts in this case and applicable law, it is hard to conclude that EMTALA's statutory purpose as manifested by Congress will be advanced by holding that the requirements for the transfer of an unstable patient apply in this case.

To the contrary, the Court's conclusion is consistent with EMTALA's primary goal of remedying the problem of inappropriate patient transfer by hospitals; ensuring patient access to emergency medical care; and preventing the practice of patient dumping, in which

Case 3:12-cv-01028-PAD   Document 59   Filed 07/18/14   Page 17 of 18

María M. Matta-Rodríguez, *et al.* v. Ashford Presbyterian Community Hosp. *et al*.
Civil No. 12-1028 (PAD)
Opinion and Order
Page 17

uninsured/indigent patients were transferred solely for financial reasons. It was never intended to become a federal malpractice statute. Correa, 69 F.3d at 1192.

### e. Doctor Capella's liability under EMTALA

Even though this issue is not addressed by any of the parties, it is clear the EMTALA claims against doctor Capella and his conjugal partnership must be dismissed as "it is generally accepted that doctors are not liable under EMTALA." Colón-Ramos v. Clínica Santa Rosa, Inc., 938 F.Supp. 2d 221, 226 (citing Del Carmen Guadalupe v. Negrón Agosto, 299 F.3d 15, 19 (1st Cir.2002)("While we have not decided the issue whether EMTALA provides a cause of action against individual physicians, all circuits that have done so have found that it does not." (internal quotation omitted)); see also Delaney v. Cade, 986 F.2d 387, 393 (10th Cir.1993)("[T]he 'legislative history makes it clear that, far from intending to allow patients to sue doctors, Congress intentionally limited patients to suits against hospitals.")(internal citations omitted). There is no reason to deviate from this view. Thus, those claims will be dismissed with prejudice.

### f. Puerto Rico Supplemental Law Claims

Because the Court has dismissed all claims over which it exercised original jurisdiction, it declines to exercise supplemental jurisdiction over plaintiffs' state law claims. Accordingly, those claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). See Camelio v. American Federation, 137 F.3d 666, 672 (1st Cir. 1998) (Federal courts may decline to exercise supplemental jurisdiction over a plaintiff's state law claims when the federal claims that gave it original jurisdiction are dismissed).

Case 3:12-cv-01028-PAD   Document 59   Filed 07/18/14   Page 18 of 18

María M. Matta-Rodríguez, et al. v. Ashford Presbyterian Community Hosp. et al.
Civil No. 12-1028 (PAD)
Opinion and Order
Page 18

## V.  CONCLUSION

In view of the foregoing, defendants' motion for summary judgment (Docket No. 42) is granted.  Plaintiffs' EMATALA claims are dismissed with prejudice, while claims under Puerto Rico law are dismissed without prejudice.

Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 18th day of July, 2014.

                                        s/Pedro A. Delgado-Hernández
                                        PEDRO A. DELGADO-HERNÁNDEZ
                                        United States District Judge